UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

      Plaintiff,

v.                                      Case No. 11-cr-107 (JNE)
                                           ORDER

Tyice Alexander Phillips,

      Defendant.

In 2011, Defendant pleaded guilty to two violations of the Armed Career Criminal Act ("ACCA") in connection with an armed robbery. The first count, aiding and abetting possession of a firearm in furtherance of a crime of violence, carried a mandatory minimum of 10 years that must be served consecutively to any other term of imprisonment imposed. *See* 18 U.S.C. § 924(c)(1). The second count, being a felon in possession of a firearm, carried a mandatory minimum of 15 years under a sentencing enhancement that applied because Defendant had previously committed three or more violent felonies. *See id.* §§ 922(g)(1), 924(e)(1). The Court sentenced Defendant to serve the minimum terms on each count, for a total of 25 years in prison.

Now, on a motion to vacate under 28 U.S.C. § 2255, Defendant has challenged his conviction and sentence in this case. He seeks to vacate his conviction for being a felon in possession under *Rehaif v. United States*, 139 S. Ct. 2191 (2019) and has challenged his 15-year sentence for that crime under *Johnson v. United States*, 576 U.S. 591 (2015). The government opposes Defendant's motion on both grounds. For the reasons stated

below, Defendant's motion is denied with respect to his *Rehaif* claim. As to his *Johnson* claim, the Court agrees that the ACCA sentencing enhancement should not apply. The Court will vacate Defendant's sentence on that count and will impose a new term of imprisonment at resentencing.

## BACKGROUND

On November 27, 2010, Defendant and two co-conspirators robbed a bar in White Bear Lake, Minnesota at gunpoint. Presentence Investigation Report ("PSR") ¶ 6. Several patrons were present during the robbery. *Id.* ¶ 7. One patron was shot by a bullet, fired by one of Defendant's co-conspirators, that ricocheted off the floor. *Id.* ¶ 8. During the robbery, Defendant pointed his loaded weapon at victims and ordered one victim into the bar's office, where he ordered her to open a safe at gunpoint. *Id.* ¶¶ 9–10. Shortly after fleeing the scene, Defendant was apprehended by law enforcement while his co-conspirators evaded the authorities until they were arrested at a later date. *Id.* ¶¶ 11–14.

For this conduct, the United States charged Defendant with two counts: aiding and abetting possession of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1) (Count 1), and being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1) (Count 2). Defendant pleaded guilty to these charges and the Court sentenced him to the custody of the BOP for a total of 300 months. On Count 1, Defendant was sentenced to serve 120 months consecutive to his sentence on Count 2. PSR ¶ 39. On Count 2, which is the only count at issue on this motion, Defendant was sentenced to serve 180 months, an enhanced sentence that applied because Defendant had three prior convictions for violent crimes. *See id.* §§ 922(g)(1),

924(e)(1). Those convictions were for (1) aggravated robbery in the first degree; (2) burglary in the first degree; and (3) aggravated robbery in the first degree, kidnapping, and burglary while possessing a dangerous weapon. *Id.* ¶¶ 61, 62, 64.[1]

## DISCUSSION

Defendant has raised two challenges to the legality of his conviction and sentence on Count 2. First, he argues that his conviction under 18 U.S.C. § 922(g) was unconstitutional because the Court accepted his guilty plea without properly advising him of an essential element of the crime: the knowledge requirement for § 922(g), as described in § 924(a)(2). *See Rehaif*, 139 S. Ct. at 2200. Second, he argues that an enhanced sentence on Count 2 was improperly applied under ACCA's residual clause, which the Supreme Court has held is unconstitutionally vague. *Johnson*, 576 U.S. at 606.

## I.    *Rehaif* Claim

Under 18 U.S.C. § 922(g)(1), it is unlawful for a person who has been convicted of "a crime punishable by imprisonment for a term exceeding one year" to possess a firearm. Section 924(a)(2) requires that anyone who "knowingly" violates § 922(g) be fined or imprisoned. In *Rehaif*, the Supreme Court held that to convict a Defendant under these provisions, "the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from

---

[1]    Although this third group of convictions consists of three separate crimes, the parties agree that these crimes did not occur on "occasions different from one another" and should be counted as a single predicate offense under ACCA. 18 U.S.C. § 924(e)(1); *see United States v. Willoughby*, 653 F.3d 738, 744 (8th Cir. 2011) (noting that predicate offenses must have a sufficient time lapse between them).

possessing a firearm." 139 S. Ct. at 2200. At the time of Defendant's guilty plea, this was not the law in the Eighth Circuit. *See United States v. Kind*, 194 F.3d 900, 907 (8th Cir. 1999) (holding that "the government need only prove defendant's status as a convicted felon and knowing possession of the firearm") *abrogated in part by Rehaif*, 139 S. Ct. at 2200.

Now that *Rehaif* has clarified that knowledge of one's prohibited status under § 922(g) is an element of the crime, Defendant argues that his guilty plea should be voided because the Court did not advise him of that element. He argues that taking his plea violated his Fifth Amendment right to due process, his Sixth Amendment right to present a defense, and fundamental fairness precepts inherent in these amendments and in Federal Rule of Criminal Procedure 11(b)(1)(G). The government argues that this claim is procedurally defaulted because he did not raise it on direct appeal. Should the Court proceed to the merits, the government argues that the error was not prejudicial because, having served sentences longer than one year, Defendant knew that he had been convicted of a crime punishable for more than one year.

**A. Procedural Default**

Claims that a defendant did not raise on direct appeal are procedurally defaulted and "may not be raised on collateral review unless the petitioner shows cause and prejudice." *Massaro v. United States*, 538 U.S. 500, 504 (2003). A defendant has cause to raise a claim, regardless of a failure to raise it on direct appeal, "where a constitutional claim [was] so novel that its legal basis [was] not reasonably available to counsel" at the

4

time the claim defaulted. *Reed v. Ross*, 468 U.S. 1, 16 (1984); *see Grooms v. United States*, 556 F. App'x 548, 551 (8th Cir. 2014) (per curiam).

At the time Defendant's right to direct appeal expired in this case, the *Rehaif* interpretation of 18 U.S.C. §§ 922(g) and 924(a)(2) was clearly unavailable because it was foreclosed by Eighth Circuit precedent. *See United States v. Thomas*, 615 F.3d 895, 899 (8th Cir. 2010) ("[I]t is well settled in this circuit that the government need only prove defendant's status as a convicted felon and knowing possession of the firearm." (quoting *Kind*, 194 F.3d at 907 (8th Cir. 1999)). Therefore, Defendant has shown cause to avoid a procedural default on his *Rehaif* claim. Next, a defendant must show prejudice to avoid a procedural default. To analyze whether Defendant was prejudiced by the alleged error, the Court must assess the merits of his claim. *See Jimerson v. Payne*, 957 F.3d 916, 928 (8th Cir. 2020) (noting that the merits of a challenge to a conviction "dovetail with the prejudice prong").

### B.  Merits of the *Rehaif* Claim

On the merits, Defendant argues that the *Rehaif* error was structural and per se prejudicial. Alternatively, he argues that it was at least prejudicial plain error because it affected his substantial rights. The government argues that a higher burden applies on collateral review and Defendant must show that the error alleged "had substantial and injurious effect or influence" on the outcome. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The government contends that Defendant's claim fails under this higher standard.

A defendant may establish a cognizable claim under § 2255 by proving a constitutional or jurisdictional error in sentencing, or an error of law that "constituted a

fundamental defect which inherently results in a complete miscarriage of justice." *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (en banc) (internal quotations omitted). Some constitutional errors are harmless. If the government can prove "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained," the defendant is not entitled to reversal. *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1907 (2017) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)). On the other hand, if the constitutional error is structural, that is, it "affects the framework within which the trial proceeds," then the error can be corrected. *Id.* (internal quotations and alterations omitted). In the context of a *Rehaif* challenge where the defendant was not informed of the knowledge element of § 922(g), the Eighth Circuit has held that accepting a constitutionally invalid guilty plea is not a structural error. *United States v. Coleman*, 961 F.3d 1024, 1029 (8th Cir. 2020).

Defendant urges the Court to reject the holding of *Coleman* and nonetheless hold that accepting his plea was a structural error. He argues that unlike the defendant in *Coleman*, who only alleged a due process violation, his conviction was a structural error based on fundamental unfairness and a violation of his Sixth Amendment right to present a defense. He cites the Fourth Circuit's position that a constitutionally invalid plea constitutes a structural error, notwithstanding the fact that the Eighth Circuit has acknowledged and declined to follow that position. *See Coleman*, 961 F.3d at 1029 n.3 (citing *United States v. Gary*, 954 F.3d 194, 207–08 (4th Cir. 2020)).

The Eighth Circuit's reasoning in *Coleman* applies squarely here. In that case, the court held that a constitutionally invalid plea to § 922(g) was not structural error because

it did "not defy harmless-error standards and the resulting harm [was] not indeterminate." *Coleman*, 961 F.3d at 1029. Similarly, in this case, the harm caused by the *Rehaif* error can be assessed under a harmless error standard. The Court can simply consider whether Defendant would have pleaded guilty had he received a proper instruction as to the knowledge element. This is the standard the Eighth Circuit has used when a defendant claims a *Rehaif* error on direct appeal. *See, e.g.*, *United States v. Jawher*, 950 F.3d 576, 580 (8th Cir. 2020); *United States v. Williams*, 776 F. App'x 387, 388 (8th Cir. 2019) (per curiam); *see also United States v. Davies*, 942 F.3d 871, 874 (8th Cir. 2019). The fact that Defendant has brought an argument under the Sixth Amendment does not prevent the Court from applying this harmless error standard. Therefore, under *Coleman*, the error alleged is not structural and does not require a reversal of Defendant's conviction.

Although the *Rehaif* error is not structural, Defendant may still present a cognizable constitutional claim unless the government can prove that the error was harmless. *See Weaver*, 137 S. Ct. at 1907.[2] A *Rehaif* error is not prejudicial if there is record evidence "demonstrating that a defendant knew he was convicted" of a crime punishable by imprisonment for more than one year. *Davies*, 942 F.3d at 874; *see, e.g.*, *Williams*, 776 F. App'x at 388 (holding that a defendant who had served a 15-year

---

[2] Although the harmless error standard applies to constitutional claims raised by Defendant, the more exacting "fundamental defect" standard applies to his remaining claims of legal error raised on collateral review. *See Sun Bear*, 644 F.3d at 704. As discussed above, because Defendant cannot satisfy the harmless error standard, he also cannot satisfy the higher fundamental defect standard.

sentence knew he had been convicted of a crime punishable by more than one year in prison). In this case, the government has pointed to record evidence that Defendant was sentenced for multiple crimes punishable by imprisonment for more than one year and served at least three prison terms in excess of one year. *See, e.g.*, PSR ¶¶ 61, 62, 64. This evidence leaves no doubt that Defendant knew, at the time of his guilty plea, that he had been convicted of crimes punishable by more than one year in prison. *See* 18 U.S.C. § 922(g)(1). Therefore, it would have made no difference if he had been advised of the knowledge element discussed in *Rehaif*.

In short, because Defendant was not prejudiced by the *Rehaif* error in this case, his motion is denied with respect to that claim.

## II.    *Johnson* **Claim**

Under *Johnson v. United States*, Defendant has challenged the validity of his ACCA-enhanced sentence. 576 U.S. 591 (2015). He has conceded that the limitations period to raise this claim has passed but argues that the Court may reach the merits of his claim under the actual innocence exception. *See* 28 U.S.C. § 2255(f). On the merits, he argues that his sentence was imposed under ACCA's unconstitutionally vague residual clause.

### A. **Procedural Default**

When a defendant raises a § 2255 motion based on a right newly recognized by the Supreme Court, that motion must be brought within one year of the date the right was recognized. 28 U.S.C. § 2255(f)(3). Here, the parties agree that the limitations period has

passed.[3] The government argues that Defendant's claim is therefore barred by the statute of limitations. Defendant argues that he may still raise his claim because he satisfies the actual innocence exception to the statute of limitations.

Notwithstanding an expired limitations period, a defendant may raise a claim under § 2255 by proving that he is actually innocent of the crime of conviction. *See Bousley v. United States*, 523 U.S. 614, 623–24 (1998). This exception requires the petitioner to show "that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

First, the parties dispute whether the actual innocence exception applies in this case, where Defendant does not claim innocence of the substantive offense but argues that he is innocent of the sentencing enhancement applied under ACCA. Second, the government argues that even if the actual innocence exception applies to Defendant's sentence, he must also prove actual innocence as to other charges that the government could have brought in this case.

---

[3]     Although the parties agree that the limitations period has passed, they disagree over which Supreme Court case gave rise to Defendant's claim. Defendant characterizes his argument as a *Johnson* claim while the government contends that Defendant invokes either *Taylor v. United States*, 495 U.S. 575 (1990) or *Mathis v. United States*, 136 S. Ct. 2243 (2016). Because Defendant argues that he was convicted under ACCA's residual clause, which was held to be unconstitutional in *Johnson*, the Court agrees that his claim is best understood as a *Johnson* claim. *Johnson* recognized a new right that the Supreme Court has made retroactively applicable to cases on collateral review. 28 U.S.C. § 2255(f)(3); *Welch v. United States*, 136 S. Ct. 1257, 1265 (2016).

1.  **The "Actual Innocence" or "Miscarriage of Justice" Exception**

In this case, Defendant has asked the Court to apply the actual innocence exception to a sentencing error. The Supreme Court has drawn a distinction between the actual innocence exception in the context of collateral attacks on convictions and collateral attacks on sentencing errors. Where a defendant claims he is actually innocent of the crime of conviction due to a constitutional error, he must show that the error "probably has caused the conviction of one innocent of the crime." *Schlup*, 513 U.S. at 322. The Supreme Court has applied a higher standard where a defendant claims to be innocent of a sentence. In those cases, which arose in the context of challenges to capital sentences, the petitioner "must show by *clear and convincing* evidence that but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty." *Id.* at 323 (quoting *Sawyer v. Whitley*, 505 U.S. 333, 336 (1992)) (emphasis in original).

When the Supreme Court first applied the actual innocence exception to a sentencing error, it noted that the phrase "actual innocence" makes intuitive sense where the defendant argues she did not commit the crime, but is less clear when applied to a defendant arguing that she is innocent of her sentence. *Sawyer v. Whitley*, 505 U.S. 333, 347 (1992). "A prototypical example of 'actual innocence' in a colloquial sense is the case where the State has convicted the wrong person of the crime." *Id.* at 340. While extending the exception to a collateral attack on a capital sentence, the Court noted that "[t]he phrase 'innocent of death' is not a natural usage of those words." *Id.* at 341. The

Court has since declined to decide if the actual innocence exception applies to challenges to noncapital sentences. *See Dretke v. Haley*, 541 U.S. 386, 393–94 (2004).

The Supreme Court and Eighth Circuit use the terms "actual innocence" and "miscarriage of justice" interchangeably when referring to the exception at issue here. *See, e.g.*, *Sawyer*, 505 U.S. at 339 ("In a trio of 1986 decisions, we elaborated on the miscarriage of justice, or 'actual innocence,' exception."); *Watts v. Norris*, 356 F.3d 937, 941 (8th Cir. 2004) ("There is another exception to the procedural-bar doctrine—actual innocence, also known as the miscarriage-of-justice exception."); *see also United States v. Bugh*, 459 F. Supp. 3d 1184, 1194 n.18 (D. Minn. 2020) (collecting cases). Although these terms ostensibly refer to the same exception, the Eighth Circuit has used two distinct rationales to excuse a procedural default. First, in *Jones v. Arkansas*, the Eighth Circuit held that a sentencing error made the defendant actually innocent of a noncapital sentence. 929 F.2d 375, 381 (8th Cir. 1991). The Eighth Circuit, sitting en banc, later cast doubt on whether the actual innocence exception could ever apply to a noncapital sentence. *See Embrey v. Herschberger*, 131 F.3d 739, 740–41 (8th Cir. 1997) (en banc). Second, in *United States v. Wilson*, the court excused a procedural default in a sentencing guidelines challenge "to avoid manifest injustice." 997 F.2d 429, 431 (8th Cir. 1993) (per curiam). The court recently invoked this second rationale to excuse a procedural default and vacate an enhanced sentence that had been applied under ACCA's residual clause. *Lofton v. United States*, 920 F.3d 572, 576–77 (8th Cir. 2019). To determine which of these rationales is most applicable to this case, the Court will review the Eighth Circuit precedents that used these rationales below.

i.     *Jones*, *Embrey*, **and** *Lindsey*

Prior to the Supreme Court decision in *Sawyer*, the Eighth Circuit extended the

actual innocence exception to attacks on noncapital sentences:

> If one is "actually innocent" of the sentence imposed, a federal habeas court can
> excuse the procedural default to correct a fundamentally unjust incarceration. It
> would be difficult to think of one who is more "innocent" of a sentence than a
> defendant sentenced under a statute that *by its very terms* does not even apply to
> the defendant.

*Jones*, 929 F.2d at 381 (internal citations omitted) (emphasis in original). As another

court in this district recently noted, the Eighth Circuit precedent since *Jones* has made it

far less clear whether the actual innocence exception applies to sentencing errors. *See*

*Bugh*, 459 F. Supp. 3d at 1191.

The Eighth Circuit, sitting en banc, reconsidered its holding in *Jones* after *Sawyer*.

*See Embrey*, 131 F.3d at 740–41. In *Embrey*, the defendant had been convicted of armed

bank robbery and was sentenced under the Federal Bank Robbery Act and Federal

Kidnapping Act. *Id.* at 740. On collateral review, the defendant invoked *Sawyer*, the

Supreme Court case that applied the actual innocence exception to a collateral attack on a

capital sentence. He argued that, under *Sawyer*, the court could reach the merits of his

case because he was actually innocent of his sentence under the Federal Kidnapping Act.

*Id.* In response to his argument, the court wrote:

> But Mr. Embrey's case is unlike *Sawyer* in a number of significant ways that are
> fatal to his argument. In the first place, Mr. Embrey's quarrel is not really with his
> sentence, it is with the fact that he was convicted. There is no legal error in the
> sentence, because, if he was correctly convicted, the sentence was a perfectly
> proper one, and Mr. Embrey does not maintain that it was not. More
> fundamentally, we think that *Sawyer*, in terms, applies only to the sentencing
> phase of death cases.

*Id.* The court went on to note that "[e]ven if the basic *Sawyer* principle were available to undermine the validity of convictions in noncapital cases, when one attempts to construct an analog to *Sawyer* for such cases it becomes perfectly apparent that Mr. Embrey's petition cannot possibly qualify for relief under it." *Id.* at 741. The court agreed with the Tenth Circuit, which had held that the actual innocence exception is only available where "the person didn't commit the crime." *Id.* (citing *United States v. Richards*, 5 F.3d 1369, 1371 (10th Cir. 1993)).

In dissent, Judge Lay summarized the majority's holding as foreclosing the application of the actual innocence exception to challenges to noncapital sentences: "The majority concludes the illegal sentence is immune from collateral attack because it finds the exception relating to the fundamental miscarriage of justice (ends of justice) is not applicable to evaluate an illegal non-capital sentence." *Id.* at 742 (Lay, J., dissenting) (footnote omitted). The dissent criticized the majority for overturning circuit precedent that had allowed "a habeas petitioner to challenge an illegal sentence even where there had been a procedural default." *Id.* at 745 (citing *Pilchak v. Camper*, 935 F.2d 145, 148 (8th Cir. 1991)); *see also Jones*, 929 F.2d at 381.

The Supreme Court, other federal circuit courts, and a panel of the Eighth Circuit have agreed that *Embrey* made the actual innocence exception unavailable in cases alleging noncapital sentencing errors. *See, e.g.*, *Dretke*, 541 U.S. at 392 (citing *Embrey* as a case that held that the actual innocence exception did not apply to noncapital sentencing errors); *Damon v. United States*, 732 F.3d 1, 4 n.4 (1st Cir. 2013) (same); *United States v.*

13

*Mikalajunas*, 186 F.3d 490, 494 (4th Cir. 1999) (same); *Cristin v. Brennan*, 281 F.3d 404, 422 (3d Cir. 2002) (observing that *Embrey* effectively overruled prior Eighth Circuit precedent on the issue); *Lindsey v. United States*, 615 F.3d 998, 1001 (8th Cir. 2010) ("We have previously held, however, that the actual innocence exception to the procedural default rule is not available to remedy errors in noncapital sentencing.").[4] These courts read *Embrey* to resolve the issue in the Eighth Circuit.

Recently, however, another court in this district concluded that the actual innocence exception still applies to noncapital sentencing errors because the discussion of that topic in *Embrey* was dicta. *Bugh*, 459 F. Supp. 3d at 1192–93. The court in *Bugh* read *Embrey* as a challenge to a conviction, not a sentence because the defendant was not actually raising a true challenge to the legality of his sentence: "But after acknowledging that the defendant was *not* challenging his non-capital sentence, the court went on to discuss whether the actual-innocence exception would apply to someone who *was* challenging his non-capital sentence. The court's discussion was plainly dicta." *Id.* at 1192 (internal citations omitted).

In *Bugh*, the court declined to follow *Lindsey*, a later Eighth Circuit panel opinion that held that *Embrey* foreclosed the application of the actual innocence exception to noncapital sentencing errors. *Id.* at 1193 (citing *Lindsey*, 615 F.3d at 1001). First, the court in *Bugh* noted that because the discussion in *Embrey* was dicta, *Lindsey* was

---

[4]     Two other Eighth Circuit panels found, in dicta, that the actual innocence exception is not available to challenge to a noncapital sentencing error. *See Roundtree v. United States*, 885 F.3d 1095, 1098 n.3 (8th Cir. 2018) (citing *Schlup*, 513 U.S. at 324–26); *United States v. Wiley*, 245 F.3d 750, 752 (8th Cir. 2001).

incorrect and ignored prior circuit precedent that had applied the exception to noncapital sentencing errors. *Id.* (citing *Jones*, 929 F.2d at 380–81; *Wilson*, 997 F.2d at 431). Second, the court found that *Lindsey* was distinguishable from prior circuit precedent because the defendant in *Lindsey* only alleged an error in calculating his sentencing guidelines range and he did not "complain that his sentence was 'imposed without, or in excess of, statutory authority.'" *Id.* (quoting *Sun Bear*, 644 F.3d at 705).

The court in *Bugh* also noted that the Eighth Circuit has recently followed the reasoning in *Jones* without acknowledging *Embrey*. In *Lofton v. United States*, the court held that a defendant's sentence was improperly enhanced under ACCA and "therefore presents a 'miscarriage of justice' that § 2255 permits us to correct, despite his failure to raise the issue earlier." 920 F.3d at 576–77.

### ii.    *Wilson*, *Sun Bear*, and *Lofton*

Although the Court in *Bugh* read *Lofton* as an extension of *Jones*, this Court reads *Lofton* as following a line of precedents separate from *Embrey* and *Jones*. Using a rationale that begins with the text of § 2255, the Eighth Circuit has excused a procedural default where the sentence imposed is "in excess of the maximum authorized by law." 28 U.S.C. § 2255(a). In *United States v. Wilson*, the defendant challenged his term of supervised release because it exceeded the statutory maximum. 997 F.2d at 429. Although the defendant had procedurally defaulted on this claim, the court excused the default because "§ 2255 expressly makes relief available if 'the sentence was in excess of the maximum authorized by law.'" *Id.* (quoting *United States v. Neely*, 979 F.2d 1522,

1524 (11th Cir. 1992)). In light of this statutory language, the court held that it could grant relief "to avoid manifest injustice." *Id.*

In *Sun Bear v. United States*, the Eighth Circuit reaffirmed the holding in *Wilson* when it explained that the miscarriage of justice exception applies where, due to an intervening change in the law, the sentence imposed "is in excess of that authorized by law." 644 F.3d 700, 706 (8th Cir. 2011) (en banc). When applying that principle in *Sun Bear*, the court found that the defendant did not qualify because his sentence was below the statutory maximum. *Id.* at 705. The defendant had challenged his sentence by arguing that, due to a change in the sentencing guidelines, he was no longer a career offender. *Id.* at 702. The court held that even if he was not a career offender, the miscarriage of justice exception still did not apply. *Id.* at 706. Unlike in an ACCA case, the court explained, the defendant's career offender designation had not increased the statutory maximum for the offense. *Id.* at 705. In other words, the district court could impose the same sentence on remand, even without a career offender designation. *Id.* Therefore, *Sun Bear* clarified that the *Wilson* exception to procedural default only applies where the sentence imposed exceeded the statutory maximum.

After *Sun Bear* reaffirmed the miscarriage of justice exception, but narrowed its scope, the Eighth Circuit has excused procedural defaults to an ACCA challenge, citing both *Sun Bear* and *Wilson*. In *Olten v. United States*, the court noted that a defendant was permitted to raise a claim that his sentence exceeded the statutory maximum under ACCA even though there was a procedural default. 565 F. App'x 558, 561 (8th Cir.

2014) (per curiam).[5] In *Lofton*, the court held that a defendant's sentence was improperly enhanced under ACCA and that error could be corrected despite a procedural default. 920 F.3d at 576–77 (citing *Sun Bear*, 644 F.3d at 705). *Lofton* addresses a claim nearly identical to Defendant's claim in this case.

The *Wilson* line of cases is best read as establishing an independent basis that permits a court to excuse a procedural default. *Wilson*, *Sun Bear*, and *Lofton* do not cite *Jones*, *Embrey*, or *Lindsey* because each line of precedent has a distinct doctrinal origin. The concept of "actual innocence," as discussed in *Jones*, *Embrey*, and *Lindsey*, developed from the language in the federal habeas corpus statute in effect in 1963. *See Kuhlmann v. Wilson*, 477 U.S. 436, 448 (1986) (explaining that the Court had created an exception to procedural default by relying on the statutory phrase "ends of justice"); *Sawyer*, 505 U.S. at 339 (explaining the origins of the actual innocence exception); *see also Embrey*, 131 F.3d at 742 (Lay, J., dissenting) (referring to the "ends of justice" exception). The Supreme Court first acknowledged an actual innocence exception in *Murray v. Carrier*, but as the Court explained in *Sawyer*, the doctrinal roots of that exception lie in the "ends of justice" language in the 1963 federal habeas statute. *Sawyer*, 505 U.S. at 339 (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).[6]

---

[5]     In *Olten*, the court ultimately denied relief because the district court would have imposed the same overall sentence even if the enhancement did not apply. 565 F. App'x at 561.

[6]     In *Jones* and *Embrey*, the Eighth Circuit cited to the Supreme Court cases that created and clarified the actual innocence exception. *See Jones*, 929 F.2d at 980 (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)); *Embrey*, 131 F.3d at 740 (citing *Sawyer*, 505 U.S. at 349). In *Lindsey*, the court cited to *Embrey*. *See Lindsey*, 615 F.3d at 1001 (citing *Embrey*, 131 F.3d at 740).

By contrast, *Wilson* describes an exception to procedural default with its origins in the language of § 2255, which creates a remedy for sentences that exceed "the maximum authorized by law." 997 F.2d at 431. The court explained that this exception was necessary "to avoid manifest injustice." *Id.* Although it did not cite to *Wilson*, the Eighth Circuit reiterated that basic principle in *Sun Bear*. 644 F.3d at 706 ("[A] miscarriage of justice cognizable under § 2255 occurs when the sentence is in excess of that authorized by law."). Finally, in *Lofton*, the court cited to both *Wilson* and *Sun Bear* to explain that the language of § 2255 permits the court to excuse a procedural default where the sentence is in excess of the statutory maximum to prevent a "miscarriage of justice." *Lofton*, 920 F.3d at 577 (citing *Sun Bear*, 644 F.3d at 705; *Wilson*, 997 F.2d at 431).

To summarize, the Eighth Circuit has developed two distinct reasons to excuse a to procedural default: one that considers a defendant's factual innocence as to the crime of conviction and one that considers whether a sentence was imposed in excess of the statutory maximum.

### iii.    Exception Applicable to Defendant's Case

In this case, the exception to procedural default for the reasons described in *Wilson*, *Sun Bear*, and *Lofton* is clearly applicable to this case. Defendant has not argued that he is factually innocent. Instead, he argues that because the ACCA enhancement was unconstitutionally applied, his sentence is illegal and it exceeds the statutory maximum

on Count 2. This case is nearly identical to *Lofton* and, therefore, that case is most applicable here.[7]

If Defendant succeeds on the merits of his *Johnson* claim and proves that the ACCA enhancement should not apply, his sentence on Count 2 would have been subject to a 10-year statutory maximum under 18 U.S.C. § 924(a)(2). Defendant is currently serving a 15-year sentence on Count 2. Should Defendant win his case on the merits, the sentence on that count would be "in excess of the maximum authorized by law." 28 U.S.C. § 2255(a).[8] Therefore, the Court may review that claim regardless of any procedural default. *See Lofton*, 920 F.3d at 577.

### 2. Actual Innocence as to Forgone Charges

The government argues that the actual innocence exception does not apply here because Defendant cannot prove that he is innocent of forgone charges. In *Bousley*, the Supreme Court noted that "where the Government has forgone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges." 523 U.S. at 624.

---

[7]     Accordingly, this Court need not determine whether *Embrey* foreclosed the application of the actual innocence exception to collateral attacks on sentencing errors.

[8]     The government has argued that the Court could simply impose the same overall sentence by increasing the sentence on Count 1 by 60 months. Even if that is true, it does not change the applicability of the exception to procedural default. The Eighth Circuit has held that where an ACCA enhancement was applied unconstitutionally on one count the defendant is entitled to resentencing, even if the overall sentence could, in theory, remain the same. *See Harlow v. United States*, 720 F. App'x 805, 807 (8th Cir. 2018) (per curiam) (citing *Gray v. United States*, 833 F.3d 919, 924 (8th Cir. 2016)). As in *Harlow*, the judgment in this case specifically notes that Defendant is serving a 15-year sentence on Count 2, which exceeds the applicable statutory maximum. *Id.* at 807 n.2.

Ultimately, the Court need not grapple with that issue here because the foregone charges principle from *Bousley* does not apply in this case. The government's argument conflates the two contexts in which the actual innocence exception applies. In *Bousley*, the defendant argued that he was innocent of the substantive offense. *Id.* Here, by contrast, Defendant has not claimed to be innocent of the crime of conviction. Instead, the exception most applicable here is the one established by *Wilson*, *Sun Bear*, and *Lofton*. That exception does not require factual innocence of the crime of conviction and only asks whether the sentence imposed exceeds the statutory maximum.

## B. The Merits of Defendant's *Johnson* Claim

An enhanced sentence applies under ACCA if a defendant "has three previous convictions . . . for a violent felony." 18 U.S.C. § 924(e)(1). At sentencing, the Court concluded that Defendant had been convicted of three violent felonies, as defined by 18 U.S.C. § 924(e)(1)(B). Now, Defendant argues that although his two prior convictions for aggravated robbery qualify as violent felonies, his prior conviction of first-degree burglary under Minnesota law does not.

A crime qualifies as a "violent felony" under § 924(e)(1) if it meets one of three definitions. First, it satisfies the force clause if it "has as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* § 924(e)(1)(B)(i). Second, under the enumerated crimes clause, violent felonies include "burglary, arson, or extortion." *Id.* § 924(e)(1)(B)(ii). Third, under the residual clause, a crime qualifies if it "otherwise involves conduct that presents a serious potential risk of physical injury to another." *Id.* In *Johnson v. United States*, the Supreme Court held that

20

the residual clause was unconstitutionally vague and, therefore, sentences imposed under that clause are now unconstitutional. 576 U.S. at 606; *see Welch*, 136 S. Ct. at 1265.

Where, as here, the court did not specify which clause the ACCA enhancement was imposed under at sentencing, the Eighth Circuit requires a defendant challenging his sentence under *Johnson* "to show by a preponderance of the evidence that the residual clause led the sentencing court to apply the ACCA enhancement." *Walker v. United States*, 900 F.3d 1012, 1015 (8th Cir. 2018). Defendant argues that his sentence must have been imposed under the residual clause because Minnesota burglary does not qualify as a violent felony under the enumerated crimes clause or the force clause. The government did not respond to Defendant's argument about the force clause. But because the burden is on the Defendant to show that the residual clause led to the enhancement, the Court will assess whether Defendant's prior conviction of first-degree burglary qualified as a violent crime under either the enumerated crimes clause or the force clause.

### 1. Enumerated Crimes Clause

To determine whether Defendant's prior conviction of first-degree burglary under Minn. Stat. § 609.582, subd. 1(b) meets the meaning of burglary contained in ACCA, the Court must apply the categorical approach. *Taylor v. United States*, 495 U.S. 575, 602 (1990). Under this approach, a crime qualifies as an ACCA "burglary," regardless of its definition or label, if its "statutory definition substantially corresponds to 'generic' burglary, or the charging paper and jury instructions actually required the jury to find all the elements of generic burglary in order to convict the defendant." *Id.* at 602. Generic burglary has three elements: (1) "unlawful or unprivileged entry into, or remaining in,"

(2) "a building or other structure," (3) "with intent to commit a crime." *Id.* at 598. A court

may not consider the facts of the case but, instead, must consider whether the crime's

elements "are the same as, or narrower than, those of the generic offense." *Mathis v.*

*United States*, 136 S. Ct. 2243, 2248 (2016). In other words, "if the crime of conviction

covers any more conduct than the generic offense, then it is not an ACCA 'burglary'—

even if the defendant's actual conduct (*i.e.*, the facts of the crime) fits within the generic

offense's boundaries." *Id.* at 2248.

In some cases, a single statutory provision "may list elements in the alternative,

and thereby define multiple crimes." *Id.* at 2249. When there are alternative elements,

making the statute "divisible," the sentencing court must apply the "modified categorical

approach." *Id.* This method requires the court to look to "a limited class of documents

(for example, the indictment, jury instructions, or plea agreement and colloquy) to

determine what crime, with what elements, a defendant was convicted of." *Id.*

Some statutes do not list alternative elements, but instead, contain alternative

"factual means of committing a single element." *Id.* The regular, unmodified categorical

approach applies to these "indivisible" statutes. *Id.* at 2248. To determine whether a

statute contains alternative elements or means, the court should determine whether "a

state court decision definitively answers the question." *Id.* at 2256. If, under state law, the

statutory alternatives carry different punishments, they must be elements. *Id.* On the other

hand, if the statute simply contains illustrative examples, the statute has listed alternative

means. *Id.* If state law does not answer the question, then the court may look to the record

of the prior conviction to determine whether the statute contains means or elements. *Id.*

In this case, Defendant was convicted of first-degree burglary under Minnesota law, which is defined as follows:

> Whoever enters a building without consent and with intent to commit a crime, or enters a building without consent and commits a crime while in the building, either directly or as an accomplice, commits burglary in the first degree . . . .

Minn. Stat. § 609.582, subd. 1. "Enters a building without consent" includes both entering and remaining in a building without consent. *Id.* § 609.581, subd. 4. This statute contains two alternatives: "enter[ing] without consent and with intent to commit a crime" and "enter[ing] without consent and commit[ing] a crime while in the building." *Id.*

The Eighth Circuit has held that Minnesota third-degree burglary is indivisible because it contains alternative means, not elements. *United States v. McArthur*, 850 F.3d 925, 938 (8th Cir. 2017).[9] The court reached that conclusion because the Minnesota Court of Appeals has held that "entering with intent to commit a crime and entering *and* committing a crime are different means of committing a single element." *See State v. Gonzales*, No. A15–0975, 2016 WL 3222795, at *3 (Minn. Ct. App. June 13, 2016) (emphasis in original). Therefore, because the statute was indivisible, the categorical approach, not the modified categorical approach, applied.

In *McArthur*, the Eighth Circuit applied the categorical approach by analyzing the alternative means of burglary to determine whether either was broader than generic burglary. The first alternative, to enter a building without consent and with intent to

---

[9]     Although *McArthur* involved a conviction of third-degree burglary, that crime's alternatives are identical to the alternatives in first-degree burglary. *See* Minn. Stat. § 609.582, subds. 1, 3.

commit a crime, contains the elements of generic burglary and, therefore, qualifies as a violent felony under ACCA. *McArthur*, 850 F.3d at 938. But the second alternative does not include intent at the time of entry—it simply requires that a person trespass and then commit a crime. *Id.* at 938–39. The government argued that this second alternative satisfies the "remaining in" definition of generic burglary. *Id.* at 939; *see Taylor*, 495 U.S. at 598. Generic burglary criminalizes both unlawful entry and remaining in a building with intent to commit a crime. *See Taylor*, 495 U.S. at 598. The Eighth Circuit rejected this argument, instead concluding that "[i]f the defendant does not have the requisite intent at the moment he 'remains,' then he has not committed the crime of generic burglary." *McArthur*, 850 F.3d at 939. Because Minnesota burglary "does not require that the defendant have formed the 'intent to commit a crime' at the time of the nonconsensual entry or remaining in," the court held that it is broader than generic burglary. *Id.*

After *McArthur*, the Supreme Court held that generic remaining-in burglary does not require intent to be formed at the moment a defendant chooses to unlawfully remain in a building. *Quarles v. United States*, 139 S. Ct. 1872, 1879 (2019). Instead, the Court held, a remaining-in burglary occurs "when the defendant forms the intent to commit a crime at any time while unlawfully present in a building or structure." *Id.* Although the Eighth Circuit has not revisited its analysis of Minnesota burglary since *Quarles*, the Seventh Circuit has. *See Chazen v. Marske*, 938 F.3d 851, 860 (7th Cir. 2019). That court observed that *Quarles* may have abrogated *McArthur* because it "rested on the 'contemporaneous intent' reasoning rejected in *Quarles*." *Id.* (citing *McArthur*, 850 F.3d

at 939).[10] Nonetheless, the Seventh Circuit concluded that Minnesota burglary is broader than generic burglary because "the state statute does not require proof of any intent at *any point*," an issue the Supreme Court "expressly declined to address" in *Quarles*. *Chazen*, 938 F.3d at 860 (emphasis in original).

Recently, two other judges in this district have also concluded that Minnesota burglary is broader than generic burglary because it lacks an intent requirement altogether. *See Bugh*, 459 F. Supp. 3d at 1200; *United States v. Raymond*, 466 F. Supp. 3d 1008, 1015 (D. Minn. 2020) (finding *Bugh* persuasive). This is an issue that was not addressed by *Quarles* or by the Eighth Circuit in *McArthur*. *See Quarles*, 139 S. Ct. at 1880 n.2 (declining to consider defendant's argument that the predicate offense contained no intent element because defendant had not preserved the argument for appeal); *McArthur*, 850 F.3d at 939–40 (considering the timing of intent in relationship to a "remaining-in" burglary, but not addressing whether Minnesota burglary lacks an intent requirement altogether).

This Court finds the reasoning in *Bugh* persuasive and agrees that Minnesota burglary is broader than generic burglary. In *Bugh*, the court concluded that Minnesota burglary does not require any intent to commit the crime. 459 F. Supp. 3d at 1201. For example, if a person enters a building without consent and commits a crime that merely

---

[10]     The government also argues that the holding in *McArthur* that first-degree burglary is indivisible was overruled by *Quarles*. Although one aspect of *McArthur* was abrogated by *Quarles*, the Eighth Circuit's determination in *McArthur* that Minnesota burglary is indivisible remains unaffected by *Quarles*. *See Bugh*, 459 F. Supp. 3d at 1196 n.22 (explaining that the Eighth Circuit's holding that burglary is indivisible "has not been abrogated, and it rests on solid footing").

25

requires a negligent or reckless state of mind, that person would have "commit[ed] burglary in Minnesota without ever forming an 'intent to commit a crime.'" *Id.* (quoting *Taylor*, 495 U.S. at 599). The court then noted several crimes where a person was convicted of burglary without ever forming intent to commit a crime. *Id.* For example, stalking and disorderly conduct only require negligence, but if a person enters a building without consent and commits one of those crimes, they are also guilty of burglary. *Id.* (citing *State v. Hanson*, A16-0467, 2017 WL 393873 (Minn. Ct. App. Jan. 30, 2017); *State v. Boyd*, A07-0875, A07-0876, 2008 WL 4224363 (Minn. Ct. App. Sept. 16, 2008)). In these cases, a defendant committed burglary without necessarily having formed the intent required for a generic burglary, as defined by *Taylor*. Therefore, Minnesota burglary is broader than generic burglary and does not qualify as a "violent felony" under ACCA's enumerated crimes clause. 18 U.S.C. § 924(e).

In this case, the government raises some additional arguments on this issue, but none are persuasive. First, the government argues that the Minnesota Supreme Court has found that burglary requires an intentional mens rea. In *State v. Garcia-Gutierrez*, the Minnesota Supreme Court noted that burglary is not a strict liability crime and contains a mens rea requirement. 844 N.W.2d 519 (Minn. 2014). In that case, the question before the court was whether the possession of a dangerous weapon, a circumstance that elevates the penalty for burglary, contains an implicit knowledge requirement. *Id.* at 520. The court held that the possession enhancement did not have an additional mens rea requirement because, among other reasons, burglary already has a mens rea requirement. *Id.* at 523–24. Under the government's reading, *Garcia-Gutierrez* stands for the

proposition that Minnesota burglary is an intentional crime. But as the court pointed out in *Bugh*, the government has assumed that any crime with a mens rea must be an intentional crime. Minnesota law considers negligence a type of mens rea, which is, by definition, an unintentional state of mind. *See In re Welfare of A.J.B.*, 929 N.W.2d 840, 850 (Minn. 2019) (noting that a negligent mens rea does not require intent). In *Garcia-Guitierrez*, the court simply indicated that burglary had a mens rea element, not that burglary required intent. *See Bugh*, 459 F. Supp. 3d at 1200. Because generic burglary requires an intentional state of mind and Minnesota burglary does not, Minnesota burglary is broader. *See Taylor*, 495 U.S. at 599; *Bugh*, 459 F. Supp. 3d at 1200.

Next, the government points to a Fifth Circuit opinion analyzing Texas's burglary law. *See United States v. Herrold*, 941 F.3d 173, 178 (5th Cir. 2019). Like Minnesota, the court noted, Texas law contains a "trespass-plus-crime" formulation of burglary that simply requires a trespass and the commission of another crime. *Id.* The defendant argued that this crime lacked an intent element under Texas law and that it was broader than generic burglary. *Id.* at 179. The court rejected that argument because Texas state courts have held that a person who enters a building without consent and then commits a crime has necessarily formed an intent to commit the crime. *Id.* (citing *DeVaughn v. State*, 749 S.W.2d 62, 65 (Tex. Crim. App. 1988) (en banc)).

The government argues that Minnesota law establishes a similar principle, citing *State v. Davis*, 864 N.W.2d 171, 178 (Minn. 2015). But *Davis* does not support the government's argument. In *Davis*, the Minnesota Supreme Court held that the district court had erred by failing to instruct the jury properly on the timing of the intent element

27

of burglary. *Id. Davis* concerned the standard formulation of burglary, which has an intent element, not the trespass-plus-crime alternative at issue here, which lacks an intent element. Unlike Texas, Minnesota law does not establish that by committing a burglary, a person has necessarily formed an intentional mens rea. Therefore, the Fifth Circuit's reasoning in *Herrold* does not apply here. 941 F.3d at 178.

Finally, the government argues that generic burglary does not require an intentional state of mind, but simply a voluntary act. This argument is a nonstarter because the Supreme Court has made clear that generic burglary requires "the intent to commit a crime," not merely a volitional act. *See Quarles*, 139 S. Ct. at 1876–77.

In short, Minnesota burglary is broader than generic burglary and does not satisfy the definition of burglary under ACCA's enumerated crimes clause.

### 2.  Force Clause

To qualify as a violent felony under ACCA's force clause, Minnesota first-degree burglary must contain, "as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). The basic definition of burglary in Minnesota, entry without consent and committing a crime, does not contain a force element. Minn. Stat. § 609.582, subd. 1. However, first-degree burglary has three aggravating circumstances: (a) if the building is a dwelling and another person is present, (b) the burglar possess a dangerous weapon, or (c) the burglar commits assault in the building. Minn. Stat. § 609.582, subd. 1. The third circumstance, committing an assault, appears to satisfy the force clause. *See United States v. Bennett*, Criminal No. 12-144 ADM/JJG, 2018 WL 3597669, at *2 (D. Minn. July 26, 2018).

In this case, Defendant's conviction was for possession of a dangerous weapon while committing a burglary. Simple possession of a dangerous weapon does not contain a force element. Minn. Stat. § 609.582, subd. 1(b); *see United States v. Brown*, 734 F.3d 824, 826 (8th Cir. 2013) (noting that a possession crime does not have an element of force) *vacated on other grounds*, 576 U.S. 1079 (2015); *see also Johnson*, 559 U.S. at 140–42 (explaining that force, as used in the force clause, means violent force). Therefore, Defendant's first-degree burglary conviction does not satisfy ACCA's force clause.

In short, Minnesota burglary does not qualify as a violent crime under ACCA's enumerated crimes clause or force clause. It follows that the enhanced sentence could only have been applied under the residual clause, rendering the enhancement unconstitutional under *Johnson*.

### III.    Resentencing

As discussed above, the sentencing enhancement was applied under ACCA's unconstitutionally vague residual clause, which "means that the sentence was imposed in violation of the Constitution." *Raymond v. United States*, 933 F.3d 988, 992 (8th Cir. 2019) (internal quotations omitted). For constitutional errors identified on a motion under § 2255, a defendant is "entitled to relief unless the error was harmless, that is, unless the enhancement did not have substantial and injurious effect or influence on the outcome of the proceeding and caused no actual prejudice to the defendant." *Id.* (internal quotations and alterations omitted). "When the record is evenly balanced as to whether a constitutional error had substantial and injurious effect or influence on the outcome, the

29

error is not harmless." *Cravens v. United States*, 894 F.3d 891, 893 (8th Cir. 2018). When

considering whether a constitutional error in sentencing caused prejudice to a defendant,

the Eighth Circuit has considered the applicable statutory maximum and the advisory

guideline range. *Id.* at 893–94.[11]

In this case, Defendant was sentenced to 180 months as to Count 2, which was

also the mandatory minimum penalty imposed under ACCA. He was sentenced to 120

months as to Count 1, which was imposed consecutive to the sentence on Count 2. At the

time of sentencing with the ACCA enhancement, the Court found that the guideline range

for Defendant's sentence was 382 to 447 months. The Court departed from that range to

arrive at a total sentence of 300 months. Although the sentence was below the guideline

range, that calculation and the sentencing were done under the assumption that a 15-year

mandatory minimum applied on Count 2. Had that mandatory minimum not applied, the

sentence would have been subject to a 10-year statutory maximum under 18 U.S.C.

§ 924(a)(2). Therefore, the enhanced sentence led to a term of imprisonment that

exceeded the otherwise applicable statutory maximum and had a "substantial and

injurious effect or influence on the outcome of the proceeding." *Raymond*, 933 F.3d at

---

[11]     The Eighth Circuit has, in some cases, held that a defendant was not prejudiced
where a sentence imposed was within the guidelines range and below the statutory
maximum. *See, e.g.*, *Sun Bear*, 644 F.3d at 706; *Olten*, 565 F. App'x at 561. However,
the Court has clarified that those cases involved statutory errors or improper applications
of the sentencing guidelines. *See Cravens*, 894 F.3d at 894 n.2; *Raymond*, 933 F.3d at
991–92. In cases involving constitutional errors, the Eighth Circuit has not held that an
error was not prejudicial simply because the same sentence was within the guideline
range and below the statutory maximum. *Cravens*, 894 F.3d at 893–94. Instead, the court
considered the full record to determine whether the error was harmless. *Id.*

992 (internal quotations omitted). Accordingly, the Court shall vacate Defendant's sentence on Count 2 and resentence him without the ACCA enhancement.

The parties are directed to submit their positions regarding resentencing and to address whether a hearing is necessary. After receiving the parties' submissions, the Court will determine how to proceed. Until that time, this Court's March 7, 2012 sentencing judgment shall remain in full force and effect.

## CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendant's Motion to Vacate [ECF No. 49] is GRANTED IN PART AND DENIED IN PART.

    a.  The motion is DENIED with respect to Defendant's *Rehaif* claim.

    b.  The motion is GRANTED with respect to Defendant's *Johnson* claim.

2. The parties shall each submit their positions regarding resentencing within 30 days of this order.

3. The terms of this Court's March 7, 2012 Sentencing Judgment shall remain in full force and effect until the Court conducts a resentencing.

Dated: January 4, 2021

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge